UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

U.S. Bank National Association,                       Case No. 10-cv-_____

       Plaintiff,

v.

Polyphase Electric Company;                          **Complaint**
Frances F. Harkonen;
Timothy W. Harkonen;
Wesley S. Harkonen; and
W. Scott Harkonen as Trustee for the
W. Scott Harkonen Living Trust,

       Defendants.
_____

       Plaintiff U.S. Bank National Association ("U.S. Bank"), for its complaint against defendants Polyphase Electric Company; Frances F. Harkonen; Timothy W. Harkonen; Wesley S. Harkonen; and W. Scott Harkonen as Trustee for The W. Scott Harkonen Living Trust, alleges as follows:

**Parties**

       1.    Plaintiff U.S. Bank is a national banking association whose articles of association designate Ohio as the location of its main office.

       2.    Defendant Polyphase Electric Company ("Polyphase") is a Minnesota corporation with its principal place of business located in Duluth, Minnesota.

       3.    Defendant Frances F. Harkonen is an individual who is a citizen of the State of Minnesota and resides in Minnesota.

4.     Defendant Timothy W. Harkonen is an individual who is a citizen of the State of Minnesota and resides in Minnesota.

5.     Defendant Wesley S. Harkonen is an individual who is a citizen of the State of California and who resides in California.

6.     Defendant W. Scott Harkonen is Trustee for The W. Scott Harkonen Living Trust (the "Trust"), and is a citizen of the State of California who resides in California.

## Jurisdiction and Venue

7.     This Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and complete diversity of citizenship exists between plaintiff and defendants because plaintiff is a citizen of Ohio, while defendants are citizens of Minnesota and California.

8.     Venue is proper in this District under 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claims herein occurred in this District and a substantial part of the property that is the subject of this action is situated here.

## Facts

**The Revolving Loan from U.S. Bank to Polyphase**

9.     On or about October 28, 2003, Polyphase executed and delivered to U.S. Bank a Revolving Credit Note in the original principal amount of $1,250,000 ("Revolving Note"). Attached hereto as Exhibit A is a true and correct copy of the Revolving Note.

10. The Revolving Note, as amended from time to time, is subject to the terms of a Revolving Credit Agreement between U.S. Bank and Polyphase dated as of October 28, 2003 ("Revolving Credit Agreement"). Attached hereto as Exhibit B is a true and correct copy of the Revolving Credit Agreement.

11. On or about February 24, 2005, Polyphase executed and delivered to U.S. Bank an Amendment to Loan Agreement and Note ("2005 Amendment") that increased the maximum amount of the Revolving Note to $1,750,000. Attached hereto as Exhibit C is a true and correct copy of the 2005 Amendment.

## The Term Loan from U.S. Bank to Polyphase

12. On or about March 8, 2007, Polyphase executed and delivered to U.S. Bank an Installment Or Single Payment Note dated as of March 8, 2007 in the original principal amount of $300,000 ("Term Note"). Attached hereto as Exhibit D is a true and correct copy of the Term Note.

## 2009 Amendment to Revolving Loan and Term Loan

13. On or about November 13, 2009, U.S. Bank and Polyphase executed a Tenth Amendment To Loan Agreement and Revolving Note and a Third Amendment To Term Note dated as of November 13, 2009 (collectively, "2009 Amendment"). Attached hereto as Exhibit E is a true and correct copy of the 2009 Amendment.

14. The 2009 Amendment amended the Revolving Note by providing that he maximum amount outstanding under the Revolving Note could not exceed $1,649,835.00, and that the Revolving Note's maturity date would change to May 20, 2010, at which time the entire outstanding principal balance of the Revolving Note

3

together with accrued and unpaid interest, late fees, and other charges became due and payable in full.

15. The 2009 Amendment also amended the Term Loan by changing its maturity date to December 20, 2009, at which time the entire outstanding principal balance together with accrued and unpaid interest, late fees, and other charges became due and payable in full.

### Collateral Securing Repayment of Revolving Loan and Term Loan

16. To secure Polyphase's performance of its obligations under the Revolving Note and the Term Note, Polyphase executed and delivered to U.S. Bank a total of 12 Security Agreements dated March 1, 2002; April 5, 2002; April 19, 2002; May 6, 2002; May 15, 2002; June 28, 2002; August 16, 2002; November 18, 2002; March 27, 2003; April 16, 2003; May 23, 2003; and August 29, 2003 (collectively the "Security Agreements"). True and correct copies of the Security Agreements are compiled in date order and attached hereto collectively as Exhibit F.

17. The Security Agreements gave U.S. Bank a security interest in essentially all of Polyphase's assets, whether then owned or existing or thereafter acquired by Polyphase, as more fully set forth in the Security Agreements (the "Collateral").

18. As further security for Polyphase's performance of its obligations under the Term Note, W. Scott Harkonen, as Trustee of The W. Scott Harkonen Living Trust, executed a Possessory Collateral Pledge Agreement (Limited Obligations) dated as of March 13, 2007, in favor of U.S. Bank (the "Trust Pledge"). A true and correct copy of the Trust Pledge is attached hereto as Exhibit G.

19. The Trust Pledge grants U.S. Bank a security interest in certain assets of the Trust set forth in the Trust Pledge, including a certain brokerage account, Account No. 81124203, at Charles Schwab & Co., Inc. (the "Schwab Account").

**The Guaranties**

20. To further secure Polyphase's performance of its obligations under the Revolving Note and the Term Note, Frances F. Harkonen executed and delivered to U.S. Bank several Continuing Guaranties (Unlimited), dated as of March 1, 2002; April 5, 2002; April 19, 2002; April 22, 2002; April 29, 2002; May 6, 2002; May 15, 2002; June 28, 2002; August 16, 2002; and October 28, 2003 (the "Frances Guaranties"). True and correct copies of the Frances Guaranties are attached hereto as Exhibit H. Under the Frances Guaranties, Frances F. Harkonen guaranteed the prompt payment when due of all obligations and liabilities that Polyphase owed to U.S. Bank.

21. To further secure Polyphase's performance of its obligations under the Revolving Note and the Term Note, Timothy W. Harkonen executed and delivered to U.S. Bank several Continuing Guaranties (Unlimited), dated as of March 1, 2002; April 5, 2002; April 19, 2002; April 22, 2002; April 29, 2002; May 6, 2002; May 15, 2002; June 28, 2002; August 16, 2002; and October 28, 2003 (the "Timothy Guaranties"). True and correct copies of the Timothy Guaranties are attached hereto as Exhibit I. Under the Timothy Guaranties, Timothy W. Harkonen guaranteed the prompt payment when due of all obligations and liabilities that Polyphase owed to U.S. Bank.

22. To further secure Polyphase's performance of its obligations under the Revolving Note and the Term Note, Wesley S. Harkonen executed and delivered to U.S.

Bank two Continuing Guaranties (Unlimited), each dated as of October 28, 2003 (the "Wesley Guaranties"). True and correct copies of the Wesley Guaranties are attached hereto as Exhibit J. Under the Wesley Guaranties, Wesley S. Harkonen guaranteed the prompt payment when due of all obligations and liabilities that Polyphase owed to U.S. Bank.

23. To further secure Polyphase's performance of its obligations under the Term Note, Wesley S. Harkonen, as Trustee of the Trust, executed and delivered to U.S. Bank a Specific Transaction Guaranty dated as of March 8, 2007 ("Trust Guaranty"). A true and correct copy of the Trust Guaranty is attached hereto as Exhibit K. Under the Trust Guaranty, the Trust guaranteed the prompt payment when due of up to $300,000 of Polyphase's liabilities to U.S. Bank under the Term Note.

**Polyphase Defaults on the Revolving Note and Term Note**

24. On December 20, 2009, the Term Note matured, and the outstanding principal balance of the Term Note, together with accrued and unpaid interest, late fees, and other charges, became due and payable in full.

25. Polyphase has failed and refused to pay to U.S. Bank the outstanding principal balance of the Term Note, together with accrued and unpaid interest, late fees, and other charges. That failure constitutes an event of default under the Term Note.

26. On May 20, 2010, the Revolving Note matured, and the outstanding principal balance of the Revolving Note, together with accrued and unpaid interest, late fees, and other charges, became due and payable in full.

27.     Polyphase has failed and refused to pay to U.S. Bank the outstanding principal balance of the Revolving Note, together with accrued and unpaid interest, late fees, and other charges.  That failure constitutes an event of default under the Revolving Note.

28.     On or about July 8, 2010, U.S. Bank sent written notice to defendants informing defendants of Polyphase's defaults under the Revolving Note and the Term Note.  U.S. Bank demanded that defendants pay Bank the outstanding principal balance of the Revolving Note and the Term Note, together with accrued and unpaid interest, late fees, and other charges, by 4:00 p.m. Central Time on July 16, 2010.

29.     Defendants failed and refused to pay the amounts due under the Revolving Note and the Term Note, and have continued to fail and refuse to pay the outstanding amounts.

## Current Outstanding Debt

30.     As of December 13, 2010, the principal amount due under the Revolving Note is $1,629,835.17, plus accrued and unpaid interest totaling $135,894.68, plus late fees of $83,483.57, plus all attorneys' fees that U.S. Bank has incurred and will incur in enforcing its rights under the Revolving Note.  Interest continues to accrue under the Revolving Note at the present daily rate of $464.05.

31.     As of December 13, 2010, the principal amount due under the Term Note Loan is $300,000.00, plus accrued and unpaid interest totaling $31,454.17, plus late fees of $15,043.75, plus all attorneys' fees that U.S. Bank has incurred and will incur in

enforcing its rights under the Term Note. Interest continues to accrue under the Term Note at the present daily rate of $85.42.

## Count 1
## Breach of Contract -- Revolving Note
### (Polyphase)

32. Polyphase breached its contract with U.S. Bank by failing to pay the outstanding principal balance of the Revolving Note together with accrued and unpaid interest, late fees, and other charges when those amounts became due and payable in full on May 20, 2010.

33. Polyphase is liable to U.S. Bank for the entire principal balance of the Revolving Note, plus accrued interest, late fees, and all attorneys' fees and collection costs that U.S. Bank has incurred in enforcing its rights under the Revolving Note.

34. U.S. Bank is entitled to judgment against Polyphase in the amount of $1,629,835.17, plus accrued and unpaid interest totaling $135,894.68, plus late fees of $83,483.57, as of December 13, 2010 plus such additional interest and late fees that incurred after December 13, 2010 through the date of judgment at the rate set for the Revolving Note which is currently $464.05 per day, plus all attorneys' fees that U.S. Bank has incurred and will incur in enforcing its rights under the Revolving Note.

## Count 2
## Breach of Contract -- Term Note
### (Polyphase)

35. Polyphase breached its contract with U.S. Bank by failing to pay the outstanding principal balance of the Term Note together with accrued and unpaid

interest, late fees, and other charges when those amounts became due and payable in full on December 20, 2009.

36. Polyphase is liable to U.S. Bank for the entire principal balance of the Term Note, plus accrued interest, late fees, and all attorneys' fees and collection costs that U.S. Bank has incurred in enforcing its rights under the Term Note.

37. U.S. Bank is entitled to judgment against Polyphase in the amount of $300,000.00, plus accrued and unpaid interest totaling $31,454.17, plus late fees of $15,043.75, as of December 13, 2010 plus such additional interest and late fees that incurred after December 13, 2010 through the date of judgment at the rate set for the Term Note which is currently $85.42 per day from December 13, 2010 through the date of judgment, plus all attorneys' fees that U.S. Bank has incurred and will incur in enforcing its rights under the Term Note.

### Count 3
### Breach of Contract – Frances Guaranties
(Frances F. Harkonen)

38. Defendant Frances F. Harkonen breached the Frances Guaranties by failing to pay to U.S. Bank all of Polyphase's indebtedness under the Revolving Note and the Term Note in Polyphase's stead when the notes became due and payable in full on May 20, 2010, and December 20, 2009, respectively.

39. Defendant Frances F. Harkonen is liable to U.S. Bank under the Frances Guaranties for the entire principal balances of the Revolving Loan and Term Loan, plus accrued interest, late fees, and all attorneys' fees and collection costs that U.S. Bank has

incurred in enforcing its rights under the Revolving Note, the Term Note, and the Frances Guaranties.

40. U.S. Bank is entitled to judgment against defendant Frances F. Harkonen in the amount of $1,929,835.17, plus accrued and unpaid interest totaling $167,348.85, plus late fees of $98,527.32, as of December 13, 2010 plus such additional interest and late fees that incurred after December 13, 2010 through the date of judgment at the rates set for the Revolving Note which is currently $464.05 per day and Term Note which is currently $85.42 per day, both from December 13, 2010 through the date of judgment, plus all attorneys' fees that U.S. Bank has incurred and will incur in enforcing its rights under the Revolving Note, the Term Note, and the Frances Guaranties.

### Count 4
### Breach of Contract—Timothy Guaranties
(Timothy W. Harkonen)

41. Defendant Timothy W. Harkonen breached the Timothy Guaranties by failing to pay to U.S. Bank all of Polyphase's indebtedness under the Revolving Note and the Term Note in Polyphase's stead when the notes became due and payable in full on May 20, 2010, and December 20, 2009, respectively.

42. Defendant Timothy W. Harkonen is liable to U.S. Bank under the Timothy Guaranties for the entire principal balances of the Revolving Loan and Term Loan, plus accrued interest, late fees, and all attorneys' fees and collection costs that U.S. Bank has incurred in enforcing its rights under the Revolving Note, the Term Note, and the Timothy Guaranties.

43.     U.S. Bank is entitled to judgment against defendant Timothy W. Harkonen in the amount of $1,929,835.17, plus accrued and unpaid interest totaling $167,348.85, plus late fees of $98,527.32, as of December 13, 2010 plus such additional interest and late fees that incurred after December 13, 2010 through the date of judgment at the rates set for the Revolving Note which is currently $464.05 per day and Term Note which is currently $85.42 per day, both from December 13, 2010 through the date of judgment, plus all attorneys' fees that U.S. Bank has incurred and will incur in enforcing its rights under the Revolving Note, the Term Note, and the Timothy Guaranties.

### Count 5
### Breach of Contract—Wesley Guaranties
### (Wesley S. Harkonen)

44.     Defendant Wesley S. Harkonen breached the Wesley Guaranties by failing to pay to U.S. Bank all of Polyphase's indebtedness under the Revolving Note and the Term Note in Polyphase's stead when the notes became due and payable in full on May 20, 2010, and December 20, 2009, respectively.

45.     Defendant Wesley S. Harkonen is liable to U.S. Bank under the Wesley Guaranties for the entire principal balances of the Revolving Loan and Term Loan, plus accrued interest, late fees, and all attorneys' fees and collection costs that U.S. Bank has incurred in enforcing its rights under the Revolving Note, the Term Note, and the Wesley Guaranties.

46.     U.S. Bank is entitled to judgment against defendant Wesley S. Harkonen in the amount of $1,929,835.17, plus accrued and unpaid interest totaling $167,348.85, plus late fees of $98,527.32, as of December 13, 2010 plus such additional interest and

late fees that incurred after December 13, 2010 through the date of judgment at the rates set for the Revolving Note which is currently $464.05 per day and Term Note which is currently $85.42 per day, both from December 13, 2010 through the date of judgment, plus all attorneys' fees that U.S. Bank has incurred and will incur in enforcing its rights under the Revolving Note, the Term Note, and the Wesley Guaranties.

## Count 6
## Breach of Contract—Trust Guaranty
**(Wesley S. Harkonen, as Trustee of the Trust)**

47.     Defendant Wesley S. Harkonen, as Trustee of the Trust, breached the Trust Guaranty by failing to pay to U.S. Bank all of Polyphase's indebtedness under the Term Note in Polyphase's stead when the note became due and payable in full on December 20, 2009.

48.     Defendant Wesley S. Harkonen, as Trustee of the Trust, is liable to U.S. Bank under the Trust Guaranty for the entire principal balances of the Term Loan, plus accrued interest, late fees, and all attorneys' fees and collection costs that U.S. Bank has incurred in enforcing its rights under the Term Note and the Trust Guaranty.

49.     U.S. Bank is entitled to judgment against defendant Wesley S. Harkonen, as Trustee of the Trust, in the amount of $300,000.00, plus accrued and unpaid interest totaling $31,454.17 plus late fees of $15,043.75, as of December 13, 2010 plus such additional interest and late fees that incurred after December 13, 2010 through the date of judgment at the rates set forth in the Term Note which is currently $85.42 per day, plus all attorneys' fees that U.S. Bank has incurred and will incur in enforcing its rights under the Term Note and the Trust Guaranty.

## Count 7
## Replevin of Collateral

50. Under the terms of the Security Agreements, the Collateral was pledged as security for Polyphase's obligations under the Revolving Loan and the Term Loan.

51. Under the terms of the Trust Pledge, the Schwab Account was pledged as security for Polyphase's obligations under the Term Loan.

52. Polyphase has defaulted under the terms of the Revolving Loan and the Term Loan and related documents.

53. As a result of Polyphase's defaults, U.S. Bank is entitled to an order under Chapter 565 of the Minnesota Statutes granting it possession of the Collateral and the Schwab Account, ordering defendant to deliver the Collateral and the Schwab Account to U.S. Bank, and allowing U.S. Bank to dispose of the Collateral and the Schwab Account and apply the proceeds in accordance with Minnesota law.

54. U.S. Bank is also entitled to enter the premises of Polyphase and secure the premises for the purpose of ensuring control over the Collateral.

55. U.S. Bank is entitled to immediate possession of the Collateral and the Schwab Account.

WHEREFORE, U.S. Bank seeks judgment against Defendants as follows:

1. Judgment against Polyphase in the amount of $1,949,835.17, plus accrued and unpaid interest totaling $167,348.85, plus late fees of $98,527.32, as of December 13, 2010 plus such additional interest and late fees that incurred after December 13, 2010 through the date of judgment at the rates set for the Revolving Note which is

currently $464.05 per day and Term Note which is currently $85.42 per day from December 13, 2010 through the date of judgment, plus all attorneys' fees that U.S. Bank has incurred and will incur in enforcing its rights under the Revolving Note and the Term Note.

2. Judgment against Frances F. Harkonen in the amount of $1,929,835.17, plus accrued and unpaid interest totaling $167,348.85, plus late fees of $98,527.32, as of December 13, 2010 plus such additional interest and late fees that incurred after December 13, 2010 through the date of judgment at the rates set for the Revolving Note which is currently $464.05 per day and Term Note which is currently $85.42 per day from December 13, 2010 through the date of judgment, plus all attorneys' fees that U.S. Bank has incurred and will incur in enforcing its rights under the Revolving Note and the Term Note.

3. Judgment against Timothy W. Harkonen in the amount of $1,929,835.17, plus accrued and unpaid interest totaling $167,348.85, plus late fees of $98,527.32, as of December 13, 2010 plus such additional interest and late fees that incurred after December 13, 2010 through the date of judgment at the rates set for the Revolving Note which is currently $464.05 per day and Term Note which is currently $85.42 per day from December 13, 2010 through the date of judgment, plus all attorneys' fees that U.S. Bank has incurred and will incur in enforcing its rights under the Revolving Note and the Term Note.

4. Judgment against Wesley S. Harkonen in the amount of $1,929,835.17, plus accrued and unpaid interest totaling $167,348.85, plus late fees of $98,527.32, as of

December 13, 2010 plus such additional interest and late fees that incurred after December 13, 2010 through the date of judgment at the rates set for the Revolving Note which is currently $464.05 per day and Term Note which is currently $85.42 per day from December 13, 2010 through the date of judgment, plus all attorneys' fees that U.S. Bank has incurred and will incur in enforcing its rights under the Revolving Note and the Term Note.

5. Judgment against defendant W. Scott Harkonen, as Trustee of the W. Scott Harkonen Living Trust, in the amount of $300,000.00, plus accrued and unpaid interest totaling $31,454.17, plus late fees of $15,043.75, as of December 13, 2010 plus such additional interest and late fees that incurred after December 13, 2010 through the date of judgment at the rates set for the Term Note which is currently $85.42 per day from December 13, 2010 through the date of judgment, plus all attorneys' fees that U.S. Bank has incurred and will incur in enforcing its rights under the Term Note and the Trust Guaranty.

6. An order: (a) granting U.S. Bank possession of the Collateral and the Schwab Account; (b) requiring Polyphase and W. Scott Harkonen, as Trustee for the W. Scott Harkonen Living Trust, to deliver the Collateral and the Schwab Account, (c) allowing U.S. Bank to enter the premises of Polyphase to secure the premises in order to ensure control over the Collateral, and (d) allowing U.S. Bank to dispose of the Collateral and Schwab Account and apply the proceeds in accordance with Minnesota law.

7. Any further relief as the Court may find just and equitable.

Dated: December 14, 2010

FAEGRE & BENSON LLP

 s/ Charles F. Webber
Charles F. Webber (#215247)
cwebber@faegre.com
Erin M. Verneris (#0335174)
everneris@faegre.com
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
(612) 766-7000

Attorneys for Plaintiff
U.S. Bank National Association

fb.us.6030406.02