UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

U.S. Bank National Association,                             Civil No. 10-4881 (DWF/LIB)

        Plaintiff,

v.                                                                              **MEMORANDUM**
                                                                       **OPINION AND ORDER**
Polyphase Electric Company,
Frances F. Harkonen,
Timothy W. Harkonen,
Wesley S. Harkonen, and
W. Scott Harkonen as Trustee for the
W. Scott Harkonen Living Trust,

        Defendants.

_____

W. Scott Harkonen as Trustee for the
W. Scott Harkonen Living Trust, and
Wesley S. Harkonen,

        Cross-Claimants,

v.

Frances F. Harkonen,
Timothy W. Harkonen, and
Polyphase Electric Company,

        Cross-Defendants.

_____

Faris Rashid, Esq., Charles F. Webber, Esq., Erin M. Verneris, Esq., Faegre Baker Daniels LLP, counsel for Plaintiff U.S. Bank National Association.

John F. Hedtke, Esq., Hedtke Law Office, counsel for Defendants Polyphase Electric Company, Frances F. Harkonen, and Timothy W. Harkonen.

C.J. Schoenwetter, Esq., Bowman & Brooke LLP, and John F. Hedtke, Esq., Hedtke Law Office, counsel for Defendant Wesley S. Harkonen, individually and as trustee for the W. Scott Harkonen Living Trust.
_____

## INTRODUCTION

This matter is before the Court on Plaintiff U.S. Bank National Association's ("U.S. Bank") Motion for Summary Judgment (Doc. No. 42), Defendant Wesley S. Harkonen's Motion for Judgment on the Pleadings or, in the Alternative, Summary Judgment (Doc. No. 44), and Defendants Frances Harkonen and Timothy Harkonen's Motion for Judgment on the Pleadings or, in the Alternative, Summary Judgment (Doc. No. 52). For the reasons set forth below, the Court grants in part and denies in part Plaintiff's motion and denies Defendants' motions.

## BACKGROUND

**I.     Loan Agreements**

On October 28, 2003, Polyphase Electric Company ("Polyphase") executed a Revolving Credit Note ("Revolving Note") in favor of U.S. Bank in the original amount of $1,250,000. (Doc. No. 55, Lee Decl. ¶ 3; Doc. No. 58, Ex. A.) The Revolving Note is governed by the terms of the Revolving Credit Agreement ("Revolving Agreement"). (Lee Decl. ¶ 3; Doc. No. 58, Ex. B.) On March 8, 2007, Polyphase executed an Installment or Single Payment Note ("Term Note") to U.S. Bank in the original amount of $300,000. (Lee Decl. ¶ 5; Doc. No. 58, Ex. D.)

Polyphase and U.S. Bank amended the Revolving Agreement and Revolving Note a total of ten times. (Doc. No. 58, Ex. E.) Polyphase and U.S. Bank amended the Term

2

Note a total of three times.  (*Id.*)  The final amendment document, entitled "Tenth Amendment to Loan Agreement and Revolving Note and Third Amendment to Term Note" (the "2009 Amendment"), revised the Revolving Note to allow for a maximum outstanding principal amount of $1,649,835.  (Lee Decl. ¶ 4; Doc. No. 58, Ex. E.)  The 2009 Amendment also amended the Revolving Note's maturity date to May 20, 2010, the date on which the entire outstanding principal balance and all other unpaid and accrued interest, fees, and charges under the Revolving Note became due and payable in full.  (Lee Decl. ¶ 4; Doc. No. 58, Ex. E.)  Additionally, the 2009 Amendment amended the maturity date of the Term Note to December 20, 2009, the date on which the entire outstanding principal balance and all other unpaid and accrued interest, fees, and charges under the Term Note became due and payable in full.[1]  (Lee Decl. ¶ 5; Doc. No. 58, Ex. E.)  The 2009 Amendment was signed by Frances F. Harkonen, President and Treasurer of Polyphase, and by Thomas A. Lee, Senior Vice President of U.S. Bank. (Doc. No. 58, Ex. E.)

On July 8, 2010, U.S. Bank sent a Notice of Default letter to Polyphase, Frances F. Harkonen, Timothy W. Harkonen, Wesley S. Harkonen, and the W. Scott Harkonen Living Trust (collectively, "Defendants"), informing them of Polyphase's defaults under the Revolving Note and Term Note.  (Lee Decl. ¶ 7; Doc. No. 58, Ex. L.)  As of December 29, 2011, "neither Polyphase nor any of the other Defendants have paid any

---

[1]   The amount of the loan ($300,000) under the Term Note remained unchanged. (Lee Decl. ¶ 5; Doc. No. 58, Ex. E.)

amount of the amounts due under either the Revolving Note or the Term Note."[2] (Lee Decl. ¶ 9.)

## II. Security Agreements and Guaranties

Between March 2002 and August 2003, Polyphase executed twelve Business Security Agreements (collectively, the "Security Agreements") in favor of U.S. Bank that secured performance of its obligations under the Revolving Note and Term Note. (Doc. No. 58, Ex. F.) The Security Agreements granted a security interest in, and collateral assignment of, all of Polyphase's assets to U.S. Bank. (*Id.*)

Between March 2002 and October 2003, Frances F. Harkonen ("Frances") signed ten Continuing Guaranties (Unlimited) ("Frances Guaranties") in favor of U.S. Bank to guarantee Polyphase's obligations under the Revolving Note and the Term Note.[3] (Doc. No. 58, Ex. H.)

Between March 2002 and October 2003, Timothy W. Harkonen ("Timothy"), Frances's son, signed ten Continuing Guaranties (Unlimited) ("Timothy Guaranties") in

---

[2] U.S. Bank did, however, receive $151,055.75 on April 28, 2011 from the proceeds of an auction of Polyphase's assets, which was applied to the principal amount owed under the Revolving Note. (Lee Decl. ¶ 10.)

[3] Between August 2002 and November 2009, Frances signed nineteen Reaffirmations of Guaranty in favor of U.S. Bank, confirming that the Frances Guaranties remain in full force and effect and that Frances agrees to the amendments made to the Revolving Agreement, Revolving Note, and Term Note. (Doc. No. 58, Ex. H.)

4

favor of U.S. Bank to guarantee Polyphase's obligations under the Revolving Note and the Term Note.[4]  (Doc. No. 58, Ex. I.)

The Frances and Timothy Guaranties state that the undersigned "guarantees prompt payment of and promises to pay or cause to be paid to the Bank the Obligations [of Polyphase] . . . whenever the Obligations become due . . . ." and that the obligations include those "existing now or in the future."  (*See, e.g.*, Doc No. 58, Ex. H at 46, Ex. I at 44.)  U.S. Bank did not sign the Frances and Timothy Guaranties or their Reaffirmations of Guaranty.  (Doc. No. 58, Exs. H, I.)  There is no signature line for U.S. Bank on these documents.  (*Id.*)

Wesley Scott Harkonen ("Wesley"), Timothy's brother and Frances's son, signed two Continuing Guaranties (Unlimited) ("Wesley Guaranties"), each dated October 28, 2003, in favor of U.S. bank to further secure Polyphase's debt under the Revolving Note and the Term Note.[5]  (Doc. No. 50, Wesley Scott Harkonen Aff. ("Wesley Aff. I") ¶¶ 4, 6; Doc. No. 58, Ex. J.)  The Wesley Guaranties similarly state that the undersigned "guarantees prompt payment of and promises to pay or cause to be paid to the Bank the Obligations [of Polyphase] . . . whenever the Obligations become

---

[4]   Between August 2002 and November 2009, Timothy signed seventeen Reaffirmations of Guaranty in favor of U.S. Bank, confirming that the Timothy Guaranties remain in full force and effect and that Timothy agrees to the amendments made to the Revolving Agreement, Revolving Note, and Term Note.  (Doc. No. 58, Ex. I.)

[5]   Between June 2004 and March 2007, Wesley also signed six Reaffirmations of Guaranty in favor of U.S. Bank, confirming that the Wesley Guaranties remain in full

(Footnote Continued on Next Page)

due . . . ." and that the obligations include those "existing now or in the future." (*See, e.g.*, Doc. No. 58, Ex. J at 1, 3.)  U.S. Bank did not sign the Wesley Guaranties or his Reaffirmations of Guaranty.  (Doc. No. 58, Ex. J.)  There is no signature line for U.S. Bank on these documents.  (*Id.*)

On March 8, 2007, the W. Scott Harkonen Living Trust (the "Trust") executed a Specific Transaction Guaranty (the "Trust Guaranty") in favor of U.S. Bank.  (Doc. No. 58, Ex. K.)  Wesley signed this document in his capacity as trustee for the Trust.  (*Id.*)  U.S. Bank did not sign the Trust Guaranty.  (*Id.*)  There is no signature line for U.S. Bank on this document.  (*Id.*)  The Trust Guaranty states that "to induce [U.S. Bank] to extend or continue credit or other financial accommodations now or in the future" to Polyphase, the Trust promises to pay or cause to be paid all obligations under Polyphase's Term Note.  (*Id.*)

Also on March 8, 2007, the Trust executed a Third Party Possessory Collateral Pledge Agreement (Limited Obligations) (the "Trust Pledge") in favor of U.S. Bank.  (Wesley Aff. I ¶¶ 4, 6; Doc. No. 58, Ex. G.)  Wesley signed the Trust Pledge in his capacity as trustee for the Trust.  (Doc. No. 58, Ex. G.)  U.S. Bank did not sign the Trust Pledge.  (*Id.*)  There is no signature line for U.S. Bank on the document.  (*Id.*)  The Trust Pledge states that, to secure all obligations under the Term Note, the Trust grants to U.S. Bank a security interest and collateral assignment in a particular Charles Schwab account

---

(Footnote Continued From Previous Page)
force and effect and that Wesley agrees to the amendments made to the Revolving Agreement, Revolving Note, and Term Note.  (Doc. No. 58, Ex. J.)

held for the benefit of the Trust (the "Charles Schwab account"). (*Id.*) On March 27, 2007, Wesley, in his capacity as trustee for the Trust, signed a Pledged Asset Account Agreement (the "Asset Agreement") regarding the Charles Schwab account. (*Id.*) The Asset Agreement states that, pursuant to the terms of the Trust Pledge, the Trust has granted to U.S. Bank a security interest in the Charles Schwab account as security for Polyphase's obligations. (*Id.*) Thomas A. Lee, Vice President of U.S. Bank, and Brad Hearn, Vice President of Charles Schwab, also signed the Asset Agreement. (*Id.*)

## III. Procedural History

In December 2010, U.S. Bank brought this action against Defendants for failure to pay the amounts due under the Revolving Note and the Term Note. (Doc. No. 1, Compl. ¶¶ 29-55.) U.S. Bank asserts the following seven counts: (1) Breach of Contract—Revolving Note; (2) Breach of Contract—Term Note; (3) Breach of Contract—Frances Guaranties; (4) Breach of Contract—Timothy Guaranties; (5) Breach of Contract—Wesley Guaranties; (6) Breach of Contract—Trust Guaranty; and (7) Replevin of Collateral. (*Id.* ¶¶ 32-55.) U.S. Bank asserts that, as of December 29, 2011, the principal amount due under the Revolving Note was $1,478,779.42,[6] plus $301,300.48 in accrued and unpaid interest and $81,491.76 in late fees. (Lee Decl. ¶ 11.) According to U.S. Bank, interest and late fees on the Revolving Note continue to accrue at a rate of $421.05

---

[6] In its Complaint, U.S. Bank asserted that the principal amount due under the Revolving Note was $1,629,835.17. (Compl. ¶ 30.) It appears to the Court that the difference between the amount sought in U.S. Bank's Motion for Summary Judgment and the amount sought in the Complaint is attributable to the $151,055.75 that U.S. Bank

(Footnote Continued on Next Page)

per day.  (*Id.*)  U.S. Bank further asserts that, as of December 29, 2011, the principal amount due under the Term Note was $300,000, plus $63,997.92 in accrued and unpaid interest and $15,000 in late fees.  (*Id.* ¶ 12.)  According to U.S. Bank, interest continues to accrue on the Term Note at a rate of $85.42 per day.  (*Id.*)

On February 3, 2011, Wesley, individually and as trustee for the W. Scott Harkonen Living Trust, filed an answer to U.S. Bank's Complaint.  (Doc. No. 8.)  On February 24, 2011, Wesley filed an amended answer and cross-claim, in which he asserts a single cause of action for contribution against Polyphase, Frances, and Timothy.  (Doc. No. 10 ¶¶ 16-19.)  On September 13, 2011, Frances, Timothy, and Polyphase filed an answer to U.S. Bank's Complaint and filed an answer to Wesley's cross-claim.  (Doc. Nos. 34, 35.)

On October 20, 2011, U.S. Bank moved for summary judgment against all Defendants.  (Doc. No. 42.)  On October 21, 2011, Wesley moved for judgment on the pleadings, or, in the alternative, for summary judgment against U.S Bank.  (Doc. No. 44.)  On December 30, 2011, Frances and Timothy moved for judgment on the pleadings, or, in the alternative, for summary judgment against U.S. Bank.  (Doc. No. 52.)

After the February 22, 2012 hearing on the motions, the parties submitted letters and additional case law to the Court.  (Doc. Nos. 78, 79.)

---

(Footnote Continued From Previous Page)
received from the proceeds of an auction of Polyphase's assets.  (Lee Decl. ¶ 10.)  This amount was applied to the principal due under the Revolving Note.  (*Id.*)

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.   U.S. Bank's Summary Judgment Motion

### A.   Claims Against Polyphase

U.S. Bank argues that it is entitled to summary judgment against Polyphase because Polyphase admits that it failed to repay its debts and does not assert a defense excusing repayment.

Polyphase admits that it breached both the Revolving Note and the Term Note by failing to pay the outstanding balances due pursuant to these agreements. (Doc. No. 34 ¶ 2.) Polyphase admits liability to U.S. Bank for the entire principal balance, plus accrued interest and late fees, under both the Revolving Note and the Term Note and for all of the attorney fees and collection costs that U.S. Bank has incurred in attempting to enforce its rights under the Revolving Note and under the Term Note. (*Id.*) Polyphase further admits to signing the Security Agreements, which gave U.S. Bank a security interest in Polyphase's assets. (*Id.*; Compl. ¶ 17; Doc. No. 58, Ex. F.)

The Court concludes that U.S. Bank is entitled to summary judgment against Polyphase with respect to Counts 1 and 2, and also with respect to Count 7 insofar as it pertains to the Security Agreements. Polyphase admits to breaching both the Revolving Note and the Term Note and does not dispute the enforceability of the Security Agreements. (*Id.* ¶ 2.) Polyphase has not responded to the instant motion. The Court accordingly grants summary judgment to U.S. Bank on its claims against Polyphase: Count 1 (Breach of Contract—Revolving Note); Count 2 (Breach of Contract—Term Note); and Count 7 (Replevin of Collateral) insofar as U.S. Bank seeks to recover the collateral pledged by Polyphase under the Security Agreements.

B.     **Claims Against Frances and Timothy Harkonen**

U.S. Bank argues that it is entitled to summary judgment on its claims against Frances and Timothy Harkonen because it is undisputed that they failed to pay the amounts due under the Revolving Note and the Term Note as required by their respective Guaranties.

Frances and Timothy admit to signing the Guaranties to secure payment of the debts Polyphase owed to U.S. Bank.  (Doc. No. 34 ¶¶ 5-6.)  They also admit that they failed to pay the amounts due under the Revolving Note and the Term Note.  (*Id.* ¶ 2.)  Frances and Timothy argue, however, that the Guaranties are not valid and enforceable contracts.  (*Id.* ¶ 28.)  Frances and Timothy assert that U.S. Bank failed to accept the Guaranties by not signing them.[7]  (Doc. No. 56 at 6.)

---

[7]     Frances and Timothy also assert that the phrase "only those terms in writing . . . signed by the parties are enforceable," found in each Guaranty, is a term requiring U.S. Bank to sign the Guaranties.  (*See, e.g.*, Doc No. 58, Ex. H at 47; Ex. I at 45.)  The Court finds this argument to be unpersuasive.  The Court declines to hold as a matter of law that U.S. Bank was one of the "parties" referred to in the Guaranties, whose signature was required to render the Guaranties enforceable.  "Parties" may refer only to the guarantors. *See generally Mrozik Constr. Inc. v. Lovering Assoc.*, 461 N.W.2d 49 (Minn. Ct. App. 1990) (requiring plain, unequivocal, and unambiguous language for payments to general contractor to be considered condition precedent in subcontract); *see also Southdale Ctr., Inc. v. Lewis*, 110 N.W.2d 857, 863 (Minn. 1961) (finding notice of acceptance not required when guaranty clearly anticipates extension of credit and guarantor can reasonably expect creditor to act in reliance on guaranty); *Midland Nat'l Bank of Minneapolis v. Sec. Elevator Co.*, 200 N.W. 851, 853-55 (Minn. 1924) (extending credit is sufficient acceptance of a guaranty); *Poser v. Abel*, 510 N.W.2d 224, 228 (Minn. Ct. App. 1994) (holding that the party seeking to enforce a contract does not need to have signed the contract if he agreed to it and acted in conformity with it).

Under Minnesota law, guaranties are effectively unilateral contracts. *See Midland Nat'l Bank of Minneapolis v. Sec. Elevator Co.*, 200 N.W. 851, 853-55 (Minn. 1924).

> The act of extending the credit, standing alone, without notice to the guarantor, is sufficient acceptance of his undertaking. That is so because the offer does not require such notice or anything other than or additional to the act of the creditor in extending credit to the principal debtor as a binding acceptance.

*Id.* at 854. A creditor need not provide notice of acceptance to a guarantor when "the terms of a guaranty unequivocally anticipate the extension of credit to a third person, and the guarantor can reasonably anticipate that the guarantee will act in reliance thereon . . . in order to make the contract effective." *Southdale Ctr., Inc. v. Lewis*, 110 N.W.2d 857, 863 (Minn. 1961). "The party seeking to enforce a writing need not have signed the document if he agreed to and has acted in conformity with the contract." *Poser v. Abel*, 510 N.W.2d 224, 228 (Minn. Ct. App. 1994) (citing *Taylor v. More*, 263 N.W. 537, 539 (Minn. 1935)); *see also Taylor Inv. Corp. v. Weil*, 169 F. Supp. 2d 1046, 1056 (D. Minn. 2001) (holding that, because defendant acted in conformity with agreement by accepting licensing fee and providing plaintiff with software product, defendant need not have signed the agreement).

By extending credit to Polyphase, U.S. Bank accepted the Frances and Timothy Guaranties. The Guaranties clearly state that the Guarantor secures payment of Polyphase's obligations "[f]or value received, and to induce U.S. Bank . . . to extend or continue credit . . . now or in the future to Polyphase Electric Company . . . ." (*See, e.g.*, Doc No. 58, Ex. H at 46, Ex. I at 44.) Additionally, the Guaranties state that "[t]he Guarantor also expressly waives notice of acceptance of this Guaranty . . . ." (*Id.*) U.S.

12

Bank acted in conformity with the Guaranties by loaning funds to Polyphase. Thus, the Court holds that the Frances and Timothy Guaranties did not need to be signed by U.S. Bank to be valid and enforceable. Accordingly, the Court grants summary judgment to U.S Bank on its breach of contract claims against Frances and Timothy.[8] U.S. Bank is entitled to judgment with respect to Count 3 (Breach of Contract—Frances Guaranties) and Count 4 (Breach of Contract—Timothy Guaranties) of the Complaint.

### C. Claims Against Wesley Harkonen

U.S. Bank asserts the following three counts against Wesley, individually or in his capacity as trustee: Count 5 (Breach of Contract—Wesley Guaranties), Count 6 (Breach of Contract—Trust Guaranty), and Count 7 (Replevin of Collateral) with respect to the Trust Pledge and Asset Agreement. U.S. Bank argues that it is undisputed that Wesley failed to perform as required by the Wesley Guaranties and the Trust Guaranty.

Wesley argues that the Trust Guaranty replaced the Wesley Guaranties. He claims that Thomas Lee, U.S. Bank's Senior Vice President, told him that the Wesley Guaranties "would no longer be enforceable" if he signed the Trust Guaranty and provided full collateral securing the Trust Guaranty pursuant to the Trust Pledge and Asset Agreement. (Doc. No. 68, Wesley Scott Harkonen Aff. ("Wesley Aff. II") ¶ 7.) According to Wesley, Mr. Lee stated that "the only personal liability [Wesley] would face as a guarantor would be under the [Trust Guaranty] and that none of the previous guaranty documents would

---

[8] For these reasons, the Court denies Frances and Timothy's motion for judgment on the pleadings or, in the alternative, for summary judgment. (Doc. No. 52.)

be enforced if [he] signed the [Trust Guaranty]." (*Id.*) Wesley contends that he relied on Mr. Lee's statements in signing the Trust Guaranty and that he would never have signed the Trust Guaranty or provided collateral security under the Trust Pledge and the Asset Agreement without these representations. (*Id.* ¶ 10.)

The Court finds that a genuine issue of material fact exists with regard to the statements Mr. Lee made and the effect such statements may have had on the enforceability of the Wesley Guaranties.[9] Thus, the Court denies U.S. Bank's motion for summary judgment with respect to each of its claims against Wesley, individually and in his capacity as trustee for the Trust.[10] U.S. Bank is not entitled to summary judgment on Count 5 (Breach of Contract—Wesley Guaranties), Count 6 (Breach of Contract—Trust Guaranty), and Count 7 (Replevin of Collateral) insofar as U.S. Bank seeks to recover the collateral pledged by the Trust under the Trust Pledge and Asset Agreement.

### III. Defendants' Motions

In light of the above, Defendants' motions for judgment on the pleadings are moot and their motions for summary judgment are properly denied. The Court concludes that U.S. Bank is entitled to summary judgment as to Counts 1 through 4 and Count 7, insofar as it seeks to recover collateral pledged by Polyphase pursuant to its Security Agreements. Counts 5 and 6, as well as U.S Bank's replevin of collateral claim against

---

[9] Wesley argues in the alternative that the Trust Guaranty itself is unenforceable. Because there are genuine issues of material fact as to the communications between Wesley and U.S. Bank, the Court does not reach this issue at this time.

[10] For the same reasons, the Court also denies Wesley's motion for judgment on the
(Footnote Continued on Next Page)

the Trust (Count 7), and Wesley's cross-claims against Frances, Timothy, and Polyphase (which are not before the Court for summary judgment), remain for trial.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff U.S. Bank's Motion for Summary Judgment (Doc. No. [42]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. To the extent U.S. Bank seeks summary judgment as to its breach of contract claims against Polyphase Electric Company, the motion is **GRANTED**. U.S. Bank is entitled to judgment on Count 1 (Breach of Contract—Revolving Note) and Count 2 (Breach of Contract—Term Note) of the Complaint. U.S. Bank is also entitled to judgment, in part, as to Count 7, insofar as U.S. Bank seeks replevin of collateral pledged by Polyphase pursuant to its Security Agreements.

   b. To the extent U.S. Bank seeks summary judgment as to its claim for breach of contract against Frances Harkonen, the motion is **GRANTED**. U.S. Bank is entitled to judgment on Count 3 (Breach of Contract—Frances Guaranties) of the Complaint.

   c. To the extent U.S. Bank seeks summary judgment as to its claim against Timothy Harkonen for breach of contract, the motion is

---

(Footnote Continued From Previous Page)
pleadings or, in the alternative, for summary judgment. (Doc. No. 44.)

**GRANTED**.  U.S. Bank is entitled to judgment on Count 4 (Breach of Contract—Timothy Guaranties) of the Complaint.

  d.  To the extent U.S. Bank seeks summary judgment as to its claims against Wesley S. Harkonen, individually and as trustee for the W. Scott Harkonen Living Trust, for breach of contract (Counts 5 and 6) and replevin of collateral pledged by the W. Scott Harkonen Living Trust (Count 7), the motion is **DENIED**.

  2.  Plaintiff U.S. Bank is entitled to judgment against Polyphase Electric Company, Frances Harkonen, and Timothy Harkonen with respect to the principal, interest, and late fees due and owning under the Revolving Note, which totaled: $1,478,779.42 in principal, $301,300.48 in interest, and $81,491.76 in late fees as of December 29, 2011.  Plaintiff U.S. Bank is also entitled to judgment against Polyphase Electric Company, Frances Harkonen, and Timothy Harkonen with respect to the principal, interest, and late fees due and owning under the Term Note, which totaled: $300,000 in principal, $63,997.92 in interest, and $15,000 in late fees as of December 29, 2011.

  3.  Defendants Frances Harkonen and Timothy Harkonen's Motion for Judgment on the Pleadings or, in the Alternative, Summary Judgment (Doc. No. [52]) is **DENIED**.

    4.       Defendant Wesley Scott Harkonen's Motion for Judgment on the Pleadings or, in the Alternative, Summary Judgment (Doc. No. [44]) is **DENIED**.

Dated: April 23, 2012                    s/Donovan W. Frank
                                                DONOVAN W. FRANK
                                                United States District Judge